

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
ATTORNEY GENERAL

The Game, Fish and Oyster Commission
Austin, Texas

Attention:  Mr. H. D. Dodgen, Executive Secretary

Opinion No. O-6094

Re: Under the given facts, may
the Game, Fish and Oyster
Commission legally pay over
to an advertising agency a
percentage of funds collect-
ed for advertising in the
department's monthly publi-
cation as compensation for
the agency's efforts in sell-
ing such advertisements, and
related questions?

Gentlemen:

We quote from your letter of December 13, 1945, as
revised by your letter of January 7, requesting the opin-
ion of this Department on the questions therein stated:

"The Game, Fish and Oyster Commission prints
a monthly publication entitled 'Texas Game and
Fish', the purpose of the publication being to
acquaint the public with better means of game
and fish conservation, latest developments in
conservation work, and all for the purpose of
attempting to keep close relations between this
department and private conservation efforts.

"As a part of the rider on the present appro-
priation law, the Legislature authorized the Game

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Fish and Oyster Commission to accept advertising in this publication provided such advertising relates to hunting and fishing.

"In our attempt to secure advertisements for the purpose of bearing a part of the cost of this effort, it is found desirable to become affiliated with the Audit Bureau of Circulations. This connection will require compensation from the state in the form of a per diem charge for the services of an employe of the Audit Bureau of Circulations to check our records to determine the amount of paid circulations so that the necessary certificate can be delivered to their affiliated advertising agencies, who will in turn solicit advertising for our circulation. In that connection we should like to have your opinion on the following questions:

"1. May this department legally enter into an agreement with the Audit Bureau of Circulations whereby the Game, Fish and Oyster Commission will pay a required fee to their representative for his examination of our records?

"2. May this department legally pay over to an advertising agency a percentage of funds collected for advertising in our publication as compensation for the agency's efforts in selling such advertisements?"

The current appropriation for State Departments (Senate Bill #317, 49th Legislature) provides in a rider to the appropriations to the Game, Fish and Oyster Commission:

"All money received from subscriptions to the monthly publication of the Game, Fish and

Oyster Commission, and all money received in payment for advertising in said publication, which the Commission is authorized to accept so long as such advertising is non-political and relates to hunting and fishing, shall be deposited in the Special Game Fund and shall be used and is hereby appropriated to defray the cost of said publication."

In our opinion No. O-4594, addressed to Honorable George H. Sheppard, Comptroller of Public Accounts, we passed upon the question whether the Texas Liquor Control Board might use a portion of the Confiscated Liquor Fund for the purchase of coveralls to be used by its enforcement agents under the following provision of Vernon's Penal Code, Article 666, Sec. 30:

"The net proceeds from all sales as provided in this Section shall be placed in a separate fund by the Board and may be used from time to time for defraying such expenses as may be necessary for the investigation of and obtaining evidence for violations of the provisions of this Act."

In answering that question, we said:

"The question of purchasing articles of wearing apparel deemed necessary to the accomplishment of the work of the Department is one primarily addressed to the discretion of the head of the particular department. Unless there is a palpable and arbitrary abuse of discretion, the decision of the department head should not be set aside. The test of the validity of such purchases is whether they are reasonably necessary to effect the State's purposes; . . ."

But we note from the copy of the proposed agreement with the Audit Bureau of Circulations that the per diem charge referred to in your letter is a charge for the services of an auditor to audit the books of the publication with a view to determining exactly its paid circulation. Such employment of private auditors is specifically prohibited by Sub-section 15 of the general rider to said appropriation in the following language:

"None of the appropriations herein made shall be used for the purpose of employing any firm, corporation or person excepting persons regularly and continuously employed by the State departments, to audit the expenditures or records of any department, board, bureau, or institution; provided, however, that if, in the judgment of the officer, officers or departments charged by law with disbursing the appropriations herein made, an audit is necessary, an application for such audit shall be made to the State Auditor requesting that such audit be made; and in the event the State Auditor shall not, in his judgment, have available sufficient funds to make the necessary audit, then the officer, officers or departments having charge of disbursing said appropriations are authorized to direct the Comptroller to transfer in lump sum and add to the appropriation for the State Auditor's office herein made the amount which in the judgment of said officer is necessary for the purpose of making said audit."

It is, therefore, our opinion that the proposed contract with the Audit Bureau of Circulations is prohibited by law.

In answer to your second question, it is our opinion that the payment of necessary, reasonable and customary fees

or compensation upon a percentage basis for the procurement of advertising for your publication is within the discretion of the Game, Fish and Oyster Commission.

We are returning herewith the copy of the proposed contract submitted with your letter.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By                    W. R. Allen

W. R. Allen
Assistant

APPROVED JAN 18 1936

FIRST ASSISTANT
ATTORNEY GENERAL

WRA:gb